IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TECH USA, INC.                          *

          Plaintiff            *

          vs.                  *   CIVIL ACTION NO. MJG-10-2351

STEPHEN E. BELBOT, et al.       *

          Defendants           *

*       *       *       *       *       *       *       *       *

<u>MEMORANDUM AND ORDER RE: ARBITRATION</u>


     The Court has before it Defendants' Motions: (1) To Compel

Arbitration of Counts I and [VI][1]; (2) For Summary Judgment on

Count I; (3) To Dismiss the Entire Complaint for Lack of Subject

Matter Jurisdiction; and (4) To Strike the Immaterial,

Impertinent, or Scandalous Matter Set Forth in the Complaint

[Document 4] and the materials submitted relating thereto.  The

Court has held a hearing and has had the benefit of the

arguments of counsel.

---

[1] Due to a typographical error, the title of the said Motion
refers to Count IV although the motion is addressed to Count VI
rather than IV.  The number was corrected in the Defendants'
Reply, and the error was noted.  <u>See</u> Defs.' Reply 2.

I.    <u>BACKGROUND</u>[2]

Plaintiff, Tech USA, Inc. ("Tech USA"), is a Maryland
company that has provided customized staffing, consulting, and
technology recruitment solutions to commercial and government
customers since 1998.  It currently has thirteen offices in ten
states and focuses on professional personnel recruitment in
technical industries such as information technology,
engineering, and aerospace.

Defendant Steven Belbot ("Mr. Belbot"), a Maryland
resident, was employed as an officer and Executive Vice
President of Tech USA until his resignation on February 24,
2010.  While working for Tech USA, Mr. Belbot signed a
Confidentiality Non-Competition Agreement (the "Agreement"),
which restricts Mr. Belbot from using Tech USA's confidential
information for any unauthorized purpose, encouraging any Tech
USA employee or client to leave the company, or competing with
Tech USA.

On March 19, 2010, three weeks after Mr. Belbot resigned
from Tech USA, his wife, Felicia Belbot ("Mrs. Belbot") formed
Innovative Services and Solutions, LLC ("IS2"), her solely owned
Maryland company.  IS2 provides staffing services and solutions
in competition with Tech USA. IS2 represents, on its website,

---

[2] The "facts" herein are as alleged by Plaintiff and are not
necessarily agreed upon by Defendants.

that it is "a minority, woman-owned business . . . committed to providing an inclusive workplace that embraces diversity." Pl.'s Opp'n 4.

In the instant lawsuit, Tech USA asserts a federal law claim and several state law claims against Defendants in eleven Counts:

     I.    Federal Unfair Competition – All Defendants

    II.    Breach of Contract (Post-Term Covenant Not to Compete) – Defendant Mr. Belbot

   III.    Breach of Contract (Post-Term Covenant Not to Solicit Employees) – Defendant Mr. Belbot

    IV.    Breach of Contract (Confidential Information) – Defendant Mr. Belbot

    V.    Statutory Trade Secret Misappropriation – All Defendants

    VI.    Common Law Unfair Competition – All Defendants

   VII.    Tortious Interference with the Contract between Plaintiff and the Huntsville Managing Director – Defendant Mr. Belbot

  VIII.    Tortious Interference with the Contract between Defendant Mr. Belbot and Plaintiff Tech USA – Defendant Mrs. Belbot and Defendant IS2

    IX.    Breach of Duty of Loyalty/Other Fiduciary Duties – Defendant Mr. Belbot

    X.    Civil Conspiracy – All Defendants

    XI.    Declaratory Judgment – Defendant Mr. Belbot

By the instant motion, Defendants seek dismissal of Count I and Count VI and other relief.[3]  If the Court should dismiss Count I (the only count presenting a federal law claim), there would remain pending only state law claims over which the Court would not have jurisdiction.[4]

II.  DISCUSSION

    A.   Arbitration

        1.   Applicable Rule

Defendants seek dismissal of Counts I and VI, contending that the Court lacks jurisdiction by virtue of an arbitration clause in the Agreement.  Defendants seek dismissal pursuant to Rules 12(b)(1) [absence of jurisdiction], 12(b)(6) [failure to state a claim] and 56 [summary judgment] of the Federal Rules of Civil Procedure.  It appears that there could be an academic debate as to which rule is applicable, or most applicable.  See 5B Wright & A. Miller, Federal Practice & Procedure § 1350, nn. 14-15 (3d ed. 2004)(collecting cases).  However, inasmuch as there appear to be no genuine issues of material fact regarding the mandatory arbitration issue, the Court would reach the same result under any of the cited rules.

---

[3] Discussed herein.

[4] Plaintiff and all Defendants are citizens of Maryland so there is no diversity.

The issue before the Court is the extent to which, if at all, the Court has jurisdiction over the claims in Counts I and VI in light of the arbitration provision in the Agreement. Thus, if required to choose a Rule, the Court would find Rule 12(b)(1) most appropriate.


     2.   <u>Legal Setting</u>

The Federal Arbitration Act reflects a strong federal policy favoring arbitration, and courts are thus required to "rigorously enforce agreements to arbitrate." <u>Shearson/American Exp., Inc. v. McMahon</u>, 482 U.S. 220, 226 (1987). However, this liberal policy does not operate to compel arbitration of issues that do not fall within the scope of the parties' arbitration agreement.

Before compelling an unwilling party to arbitration, a court must "engage in a limited review to ensure that the dispute is arbitrable - i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." <u>Murray v. United Food and Commercial Workers Intern. Union</u>, 289 F.3d 297, 302 (4th Cir. 2002). "The 'heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in

favor of arbitration.'" <u>Levin v. Alms & Assocs., Inc.</u>, --- F.3d --- , 2011 WL 456328, at *6 (4th Cir. Feb. 10, 2011)(quoting <u>Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.</u>, 867 F.2d 809, 812 (4th Cir. 1989)).

The party seeking to arbitrate must establish only two facts: "(1) [t]he making of the agreement and (2) the breach of the agreement to arbitrate." <u>Mercury Constr. Corp. v. Moses H. Cone Mem'l Hosp.</u>, 656 F.2d 933, 939 (4th Cir. 1981).  The Court must particularly "avoid reaching the merits of arbitrable issues." <u>Id.</u> (citing <u>Drivers, Chauffeurs, etc. v. Akers Motor Lines</u>, 582 F.2d 1336, 1342 (4th Cir. 1978)).

### 3.   <u>Terms of The Agreement</u>

The Agreement includes two substantive sections of significance to the instant discussion.  These are entitled:

Section 1. Confidentiality

Section 2. Restrictive Covenants

    (a)  Non-Solicitation of Employees

    (b)  Non—Solicitation of Clients

    (c)  In-term and Post-Term Covenants Not-to-Compete.

The Agreement also includes a procedural section that divides the process for resolution of disputes between

arbitration and litigation.   Section 4, Dispute Resolution,

provides in pertinent part:

[ARBITRATION]

Excepting only legal actions for matters described in
Section(s) 1, 2(a), 2(b), and/or 2(c) [] and any
workers compensation, unemployment, and ERISA/benefits
matters, any and all grievances, disputes,
controversies, causes of action, and any and all other
claims of any nature whatsoever, whether arising in
contract, under statute, in tort, or otherwise between
Employee and Employer [must be mediated and if not
settled, resolved in arbitration] . . .

[LITIGATION]

. . . . Employee hereby consents, in any action
brought in connection with any matters described in
Section(s) 1, 2(a), 2(b), and/or 2(c) of this
Agreement, to the jurisdiction of any federal or state
court within the State of Maryland, and Employee
waives all questions, issues, and defenses as to
personal jurisdiction and venue for the purpose of
carrying out this provision.

The Agreement § 4, Compl., Ex. A.


    4.    Application of The Agreement

    The Agreement expressly permits the employer to litigate in

a Maryland court "any action brought in connection with any

matters described in Section(s) 1, 2(a), 2(b), and/or 2(c) of

th[e] Agreement."   Id. (emphasis added).   The employer must,

however, mediate and arbitrate all other claims.

    The critical question presented is whether Counts I and VI

constitute "an[]action brought in connection with any matters

described in Section(s) 1, 2(a), 2(b), and/or 2(c) of th[e] Agreement." Id.

In Count I, Tech USA presents a claim that Defendants violated the Lanham Act by falsely holding IS2 out to the public as a business owned and operated by Mrs. Belbot and, by so doing, Mr. Belbot "seeks to keep from the general public and prospective customers the fact that, by managing, working for/consulting with, or otherwise rendering services to a business like Defendant IS2, he is in violation of the Agreement with Plaintiff TECH USA and of the applicable law of Trade Secrets." Compl. ¶ 30 – 32. In Count VI, Tech USA presents a claim that Mr. Belbot unfairly and deceptively represents that he has the right and the ability to engage in the staffing business when such activity is prohibited by the Agreement. Id. at ¶ 59.

There is no doubt that the claims in Count I and VI are legal actions in connection with the sections of the Agreement that are permissible subjects of litigation. The Agreement's reference to "any action brought in connection with any matters described in Section(s) 1, 2(a), 2(b), and/or 2(c) of th[e] Agreement" cannot reasonably be read to include only breach of contract actions. Agreement § 4.

Accordingly, Counts I and VI present claims "in connection with matters described in Section(s) 1, 2(a), 2(b), and/or 2(c) of th[e] Agreement." Id. Therefore, as to these claims, Mr. Belbot has "consented . . . to the jurisdiction of any federal or state court within the State of Maryland." Id. He cannot, therefore, compel Tech USA to mediate and arbitrate those claims. Moreover, of course, these claims are expressly excluded from the scope of the arbitration clause.

### 5.   Arbitration by Nonsignatories

Defendants IS2 and Mrs. Belbot seek to compel arbitration under an estoppel theory. The Fourth Circuit has applied the following test for determining when equitable estoppel applies against a signatory to an arbitration clause:

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to, or presumes the existence of, the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise, the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

Brantley v. Republic Mortg. Ins. Co., 424 F.3d 392,
395-96 (4th Cir. 2005) (citations, quotation marks,
ellipses, and alterations omitted)).

This Court has found that Mr. Belbot, a signatory to the
Agreement, cannot compel Tech USA to arbitrate the claims at
issue.  A fortiori, Defendants IS2 and Mrs. Belbot, not
signatories to the Agreement, cannot prevent Tech USA from
proceeding against them in court.

Mrs. Belbot and IS2 seek to contend that Tech USA's claims
against them are intertwined and inseparable from claims
connected with Mr. Belbot's alleged contract violations.
However, as discussed above, since the claims at issue are,
indeed, connected with Mr. Belbot's alleged contract violations,
the Agreement expressly provides that Tech USA can pursue those
claims in court.

Accordingly, IS2 and Mrs. Belbot may not compel Tech USA to
arbitrate the unfair competition claims.


B.   Waiver Of Arbitration

Tech USA contends that the Defendants waived the right to
compel arbitration by filing a summary judgment motion.  See
Khan v. Parsons Global Servs, Ltd., 521 F.3d 421, 428 (D.C. Cir.
2008).

10

Since the Court holds that Defendants had no right to compel arbitration, the waiver contention is moot.  However, the Court will note that if called upon to resolve the issue, it would find that there was no waiver.[5]


C.   Summary Judgment

Defendants' request for summary judgment, filed even before they answered the Complaint, is premature and will be denied without prejudice.

---

[5] The Fourth Circuit has held that "a party will default its right to arbitration if it 'so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay.'" Forrester v. Penn Lyon Homes, Inc., 553 F.3d 340, 343 (4th Cir. 2009) (quoting Maxum Founds., Inc. v. Salus Corp., 779 F.2d 974, 981 (4th Cir. 1985)). The party opposing arbitration bears a heavy burden to demonstrate waiver. Id.

"[I]n concert with other circuits, we have consistently held that because of the strong federal policy favoring arbitration 'we will not lightly infer the circumstances constituting waiver.'" Patten Grading & Paving, Inc. v. Skanska USA Building, Inc., 380 F.3d 200, 204 (4th Cir. 2004)(quoting Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 95 (4th Cir. 1996)). The dispositive question is whether the party objecting to arbitration has suffered actual prejudice, and Tech USA cannot meet the burden to demonstrate prejudice in this case.  See MicroStrategy, Inc. v. Lauricia, 268 F.3d 244, 249 (4th Cir. 2001).

Additionally, Maryland Courts have held that filing a motion for summary judgment, without more, does not suffice to waive arbitration.  See Freedman v. Comcast Corp., 988 A.2d 68, 81-82 (Md. App. 2010).

D.    Striking Matter

Defendants seek to have the Court strike from the Complaint the allegations that "Mr. Belbot is hiding behind his wife's skirts," (Compl. ¶ 11) and "Mr. Belbot is now hiding behind the skirts of Defendant Ms. Belbot and her newly-created, alleged "minority, woman-owned" business." Compl. ¶ 25.

A "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The phrases Defendants seek stricken from the Complaint are not immaterial since Tech USA alleges that Mr. Belbot is hiding his alleged control of IS2 by making it appear that the business is controlled by Mrs. Belbot. Moreover, the Court does not find the statements to be offensive but, rather, to constitute, ion context, a reasonable metaphorical expression.  Inasmuch as motions to strike are highly disfavored, the Court will deny the Defendants' motion to strike. See Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001).


III. CONCLUSION

For the foregoing reasons:

1.    Defendants' Motions: (1) To Compel Arbitration of
      Counts I and [VI][6]; (2) For Summary Judgment on Count

---

[6] As noted, due to a typographical error, the title of the said

I; (3) To Dismiss the Entire Complaint for Lack of
Subject Matter Jurisdiction; and (4) To Strike the
Immaterial, Impertinent, or Scandalous Matter Set
Forth in the Complaint [Document 4] are DENIED.

2.   Defendants shall Answer Plaintiff's Complaint by March
28, 2011.

3.   By March 28, 2011, Plaintiff shall arrange a telephone
conference to discuss pretrial matters, including the
schedule for further proceedings.


SO ORDERED, on <u>Monday, March 14, 2011</u>.


                        <u>      /s/      </u>  _____
                        Marvin J. Garbis
                     United States District Judge

---

Motion refers to Count IV, but the motion is addressed to Count
VI.